**UNITED STATES of America ex rel. James R. BACHMAN, No. 30745, Plaintiff,**

**v.**

**Stephen L. HARDY, Ph.D., Administrator, Defendant.**

**No. 85 C 8075.**

United States District Court, N.D. Illinois, E.D.

March 14, 1986.

---

Keith E. Roberts, Donovan & Roberts, Wheaton, Ill., for plaintiff.

Sally Dilgart, Atty. Gen., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

James R. Bachman has filed a petition for a writ of habeas corpus with this court alleging therein that he is being held in state prison in violation of the Constitution. Specifically, Bachman claims he was denied due process at his trial because his plea of guilty was involuntarily elicited, because his sentence was imposed in violation of his fifth amendment privilege against self-incrimination, and because he did not receive effective assistance of counsel. Respon-

dent, Administrator Stephen L. Hardy, has moved for summary judgment in favor of denying the writ. For the reasons stated below, respondent's motion is granted and the petition is denied.

On April 21, 1982, a fifty-nine count indictment was returned and filed against Bachman relating to an incident which occurred on March 24, 1982 involving Lisa A. Moore and Mary Ann Wainwright. The indictment consisted of ten counts of deviate sexual assault, thirty-two counts of aggravated kidnapping, seven counts of indecent liberties with a child, seven counts of armed violence and three counts of intimidation. On November 16, 1982, Bachman entered a plea agreement whereby in exchange for a plea of guilty to two counts of deviate sexual assault, two counts of aggravated kidnapping and one count of indecent liberties with a child, the State would nolle prosequi all remaining counts. The state court accepted Bachman's pleas.

In accepting Bachman's pleas, the trial court erroneously admonished him that aggravated kidnapping was a Class X felony under Illinois law requiring a sentence of not less than six nor more than thirty years of imprisonment. In fact, aggravated kidnapping other than for ransom, the crime with which Bachman was charged in thirty-two counts, is a Class 1 felony, carrying a possible sentence of not less than four nor more than fifteen years, plus two years mandatory supervised release with the possibility of enhancement. The assistant state's attorney did not correct the erroneous admonitions, nor did defendant's trial court counsel. The trial court did correctly advise Bachman that deviate sexual assault was a Class X felony and the crime of indecent liberties with a child was a Class 1 felony.

In anticipation of the sentencing hearing, the state court ordered[1] Bachman to submit to a psychiatric examination at the George R. Lewis Institute.[2] The court is-

---

1. There is a dispute as to whether the court ordered the examination on its own motion, or on the motion of the state. For purposes of this petition, this issue is immaterial.

2. The parties and the state court judge refer to the examination as both "psychiatric" and "psychological" in nature, even though Dr. George Lewis, the person who conducted the examination, is apparently only a psychologist. The

sued the order because it felt that Bachman might be a danger to the community and the psychiatric report, to be incorporated within the State's presentence report, might more accurately inform the court on this matter. *See* Transcript, dated December 7, 1982, at 4. Neither the court, Bachman's counsel, nor the assistant state's attorney warned Bachman that anything he said in the psychiatric examination could be used against him at the sentencing hearing to lengthen his sentence and that he had a privilege not to incriminate himself. However, Bachman's counsel was present in court when the court ordered the examination and was aware of its purpose. *See id* at 3–7. The psychiatric examination was summarized in a Psychological Assessment Report and was received by the court. The report contained admissions of Bachman's prior drug use, for which apparently there were no convictions. The court also received a detailed presentence investigation report prepared by probation officer Ray Riggs. Officer Riggs interviewed Bachman after the psychiatric examination. Bachman chose to convey the information about his drug use history to Officer Riggs after Riggs had advised Bachman that any information he gave to Riggs could be used against him in sentencing. *See* Transcript dated May 13, 1983 at 4.

On February 10, 1983, the case came before the state trial court for sentencing. The assistant state's attorney presented evidence in aggravation of the crimes, including certain poems which Bachman now claims to have been incompetent evidence. The poems were allegedly authored by Bachman and the prosecutor argued that Bachman was acting out the lines of these poems. Bachman's trial attorney did not object to this allegedly incompetent evidence, or to the prosecutor's arguments relating to this evidence, but did submit into evidence dozens of other poems written by Bachman. After a recess, the court delivered its decision. Bachman was sentenced to concurrent terms of twenty-four years on each of the two deviate sexual

assault charges and the two aggravated kidnapping charges, the court still believing the aggravated kidnapping charges to be Class X, rather than Class 1, felonies. Bachman was sentenced to a concurrent term of ten years on the indecent liberties charge. On June 3, 1983, after Bachman's new (and current) attorney moved for leave to withdraw the guilty pleas or, alternatively, a reduction in sentence, the court reduced Bachman's sentence for the aggravated kidnapping convictions from twenty-four years to fifteen years. Thus, Bachman now serves time under two concurrent fifteen year sentences and one concurrent ten year sentence.

Bachman appealed the trial court's decision to the Appellate Court of Illinois, Second Appellate District. The appellate court affirmed the judgments of the trial court. Bachman then petitioned the Illinois Supreme Court for leave to appeal the decision of the appellate court. By letter dated November 30, 1984, Bachman was informed by the Clerk of the Illinois Supreme Court that his petition had been denied. This petition for a writ of habeas corpus followed.

### Exhaustion of State Remedies

It is undisputed that before a federal court can consider a state prisoner's petition for a writ of habeas corpus, that prisoner normally must have exhausted the available state remedies. 28 U.S.C. § 2254; *Rose v. Lundy*, 455 U.S. 509, 517, 102 S.Ct. 1198, 1202, 71 L.Ed.2d 379 (1982). The exhaustion requirement refers only to state remedies still available at the time the federal petition is filed. *Nutall v. Greer*, 764 F.2d 462, 463 (7th Cir.1985); *United States ex rel. Johnson v. McGinnis*, 734 F.2d 1193, 1196 (7th Cir.1984). Furthermore, the federal habeas corpus statute allows for non-exhaustion of state remedies where circumstances exist rendering state remedies ineffective to protect the rights of the state prisoner. *Young v. Ragen*, 337 U.S. 235, 238–39, 69 S.Ct. 1073, 1074–75, 93

distinction takes on no special significance in this opinion and the words are, at times, used

interchangeably.

L.Ed. 1333 (1949); *Thompson v. Reivitz,* 746 F.2d 397, 400 (7th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 2332, 85 L.Ed.2d 849 (1985). Thus, the threshold question here is whether Bachman has exhausted the still-available state remedies for his constitutional claims and, if not, whether that non-exhaustion can be excused.

■■■■ Respondent does not argue that Bachman has inexcusably failed to exhaust his state remedies, and indeed there is no inexcusable failure here. According to Bachman's analysis, there are only three forms of relief still available to Bachman in Illinois. This court agrees, however, that these alternatives are all completely ineffective avenues for addressing Bachman's claims. The first alternative is Illinois statutory replacement for the writ of coram nobis. Ill.Rev.Stat. ch. 110, § 2–1401. Because Bachman is not claiming that he has now discovered new facts which, had they been available to the trial judge originally, would have prevented the conviction, this remedy can serve no purpose in a case such as this where Bachman is only seeking redress for a violation of his constitutional rights. The second alternative, Illinois' habeas corpus procedure, Ill.Rev.Stat. ch. 110, § 10–101 et seq., is also a meaningless remedy here since under that procedure relief is granted only if the trial court had no jurisdiction over the petitioner or the subject matter; constitutional claims are not addressed. *United States ex rel. Allum v. Twomey,* 484 F.2d 740, 742 n. 6 (7th Cir.1973). The final alternative is the Illinois Post-Conviction Hearing Act. Ill.Rev. Stat. ch. 38, § 122–1 et seq. The Seventh Circuit has squarely held that because the Illinois post-conviction courts inflexibly (with an exception immaterial here) apply the doctrine of res judicata to all issues raised on direct appeal, or consider waived any issues not raised on appeal, Illinois post-conviction relief is an ineffective reme-

dy.[3] *Gray v. Greer,* 707 F.2d 965, 967 (7th Cir.1983); *United States ex rel. Williams v. Brantley,* 502 F.2d 1383 (7th Cir.1974). Thus, all the remedies still available to Bachman are ineffective to protect Bachman's constitutional rights and his failure to exhaust these remedies is excused.

### Procedural Forfeiture or "Waiver" Precluding Habeas Relief

■■■■ Once a habeas petitioner has satisfied the exhaustion requirement, he must contend with another threshold requirement: he must convince a court that he has not forfeited or waived a potential habeas argument by his failure to present it in a procedurally proper fashion to the state trial and appellate courts. Alternatively, if the petitioner has failed to present the contention to the state courts, the federal district court can consider the contention only if he can demonstrate sufficient "cause" for the failure and "prejudice" resulting from it. *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). In particular, a petitioner's failure to present a particular constitutional claim on direct appeal to a state appellate court is subject to this "cause and prejudice" test, even if the petitioner has otherwise brought a timely appeal in which certain other errors are properly alleged. *United States ex rel. Spurlark v. Wolff,* 699 F.2d 354 (7th Cir.1983) (en banc); *United States ex rel. Crist v. Lane,* 745 F.2d 476 (7th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 2146, 85 L.Ed.2d 503 (1985); *Nutall v. Greer,* 764 F.2d 462, 463–65 (7th Cir.1985). This is because under Illinois procedural law, issues which were were not but could have been raised on direct appeal are deemed forever waived, and relief for those claims will not be available on state post-conviction relief. *People v. Kamsler,* 39 Ill.2d 73,

---

**3.** The one exception to the res judicata-or-waiver rule applies when "fundamental fairness" requires that the rule be relaxed. *People v. Hamby,* 32 Ill.2d 291, 205 N.E.2d 456 (1965). However, the fundamental fairness exception is quite limited, *see Gray v. Greer,* 707 F.2d 965,

968 (7th Cir.1983), and respondent makes no attempt to argue that it has any application here. Accordingly, this court assumes it does not apply here. *Cf. United States ex rel. Williams v. Brantley,* 502 F.2d 1383, 1386 (7th Cir. 1974).

233 N.E.2d 415 (1968); *People v. Churchill*, 92 Ill.App.3d 1006, 48 Ill.Dec. 364, 416 N.E.2d 395 (3d Dist.1981); *People v. Edwards*, 83 Ill.App.3d 128, 403 N.E.2d 771 (3d Dist.1980) *cert. denied*, 449 U.S. 1087, 101 S.Ct. 877, 66 L.Ed.2d 813 (1981). This "waiver" or forfeiture then becomes an independent and adequate state ground for the denial of a petitioner's constitutional claims, and a federal court, heeding the concerns of comity and federalism, should respect that ground and deny the petition. By contrast, if the petitioner's constitutional claim is not deemed waived, then there is no state ground barring review that a federal court is expected to respect, and this court may then consider the merits of the claim.

In this case, respondent contends that Bachman failed to raise the constitutional issue of the involuntariness of his guilty pleas on direct appeal, that there is no cause for this failure or prejudice resulting from it, and that therefore under *Sykes* Bachman has waived his right to present that issue to this court. Respondent does not argue that Bachman has also failed to raise the two other constitutional contentions advanced here—ineffective assistance of counsel and violation of the fifth amendment—on the direct appeal. And indeed it appears from the record that both these issues were clearly litigated in the state appellate system. Although the parties here do not address the question, it would seem that even if respondent is correct as to Bachman's waiver of the involuntariness issue, he has not waived the other two issues and those may be considered by this court. But the court need not concern itself with that question because, as explained below, the court finds that Bachman did in fact raise the issue of the involuntary guilty plea with the state appellate court, despite respondent's contrary contentions, with sufficient clarity to put that court on fair notice that the issue was being presented.

To determine whether a petitioner has in fact raised a particular constitutional issue with a state appellate court, the Supreme Court has instructed lower courts to decide whether the petitioner has provided the state with a "fair opportunity" to apply the controlling federal legal principles to the facts bearing on his constitutional claim. *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Picard v. Conner*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). Bachman's proffered involuntariness-due process claim may not be "so clearly distinct from the claims he has already presented to the state courts that it may fairly be said that the state courts have had no opportunity to pass on the claim." *Humphrey v. Cady*, 405 U.S. 504, 517 n. 18, 92 S.Ct. 1048, 1056 n. 18, 31 L.Ed.2d 394 (1972). The argument presented to the state court purporting to cover the now-proffered constitutional claim must:

(a) rely on pertinent federal cases employing constitutional analysis; (b) rely on the state cases employing constitutional analysis in like fact situations; (c) assert the claim in terms so particular as to call to mind a specific right protected by the Constitution; or (d) allege a pattern of facts that is well within the mainstream of constitutional litigations, [otherwise] we cannot say that the state court has considered or had a fair opportunity to consider and correct the subsequently alleged constitutional violation.

*United States ex rel. Cole v. Lane*, 752 F.2d 1210, 1219 (7th Cir.1985) (quoting *United States ex rel. Sullivan v. Fairman*, 731 F.2d 450, 454 (7th Cir.1984).

With these standards in mind,[4] and with particular attention paid to the four *Sullivan v. Fairman* factors, this court can confidently conclude that the appellate court was "fairly alerted" (*see Sullivan*, 731 F.2d at 453) to Bachman's constitutional claim arising from his allegedly involun-

---

**4.** What the Seventh Circuit said in *Sullivan* is equally true here: "Although a number of the cases cited in this opinion, including *Picard v. Connor* and *Anderson v. Harless*, are exhaustion cases, the analysis dealing with whether a state court has been fairly apprised of potential constitutional ramifications of a claimed trial court error is equally applicable to waiver cases." *Sullivan v. Fairman*, 731 F.2d at 453 n. 4.

tary guilty plea. However, this is not apparent from a cursory examination of Bachman's appellate court brief. The brief's first argument heading states only that trial court "abused its discretion" in denying Bachman's motion to withdraw his pleas of guilty. The abuse of discretion, Bachman argued, occurred when the trial court refused to vacate Bachman's pleas after it violated Supreme Court Rule 402, Ill.Rev.Stat. ch. 110A, § 402, by misinforming Bachman as to the maximum sentence for aggravated kidnapping. Rule 402 provides in part that "[t]he court shall not accept a plea of guilty without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following: (1) the nature of the charge; [and] (2) the minimum and maximum sentence prescribed by law...." Respondent contends that since this part of the brief presents only an abuse of discretion claim arising out of a technical violation of a state rule, no fair notice of the constitutional involuntariness claim was given to the state appellate court.

Although respondent's argument has some force at first blush, it is ultimately unconvincing upon a careful reading of the body of Bachman's state appellate brief. The body of the argument goes beyond the mere label of "abuse of discretion" and explains that the abused discretion fundamentally derives from not simply a refusal to cure a violation of Rule 402, but a refusal to cure a violation of due process itself. Thus, according to Bachman's argument, a Rule 402 violation is coincidental with and rooted in a due process violation arising out of an involuntary guilty plea. This much is clear from the very first paragraph of the argument section of Bachman's brief.

> The current form of Supreme Court Rule 402 resulted largely from the decision of the United States Supreme Court in *Boykin v. Alabama,* (1969), 395 U.S. 238 [89 S.Ct. 1709, 23 L.Ed.2d 274].... In *Boykin,* the Supreme Court held that it is a violation of due process to accept a guilty plea without an affirmative showing placed on the record, that the defendant voluntarily and understandingly entered

his plea of guilty. (See Committee Comments to Supreme Court Rule 402, S.H.A. ch. 110A, ¶ 402).

Bachman's Opening Appellate Court Brief at 8.

As a further example of Bachman's presentation of the federal due process concern with the manner in which his plea was entered, two pages after the *Boykin* citation Bachman again explicitly refers to the involuntariness of his plea: "Obviously, it was everyone's mistaken understanding that the remaining counts included thirty Class X felonies when in fact they were Class 1 felonies. It is submitted that such an agreement and the entry of those pleas cannot be said to be knowingly and understandingly entered." *Id.* at 10. Bachman then cites the state case of *People v. Woodruff,* 55 Ill.App.3d 803, 13 Ill.Dec. 614, 616, 371 N.E.2d 331, 333 (2d Dist.1977) to reiterate the due process implications of this involuntariness:

> Where all parties, including the sentencing court, misapprehend the sentence to which an agreement exposes defendant, and the defendant agrees in reliance upon the misapprehension, essential due process requires that defendant be given an opportunity to reconsider the acquiescence which he gave.

*See id.* at 12.

Thus, Bachman was not merely alleging a simple, technical violation of the precepts of Supreme Court Rule 402 as the basis for his abuse of discretion claim. Rather, Bachman fully explained that the underlying reason for why there was in fact a Rule 402 violation was that due process itself had been violated when the trial court entered his misinformed and therefore involuntary guilty pleas. Consequently, the state appellate courts were fully apprised of the federal due process claim arising from Bachman's allegedly involuntary pleas. Certainly, then, under the four part standard the Seventh Circuit articulated in *Sullivan v. Fairman, supra,* it is clear that the state appellate court was given a "fair opportunity" to consider the due process claim urged in this court. Specifically,

Bachman cited to (a) federal due process cases (*Boykin v. Alabama*) and (b) state cases employing a federal due process analysis (*People v. Woodruff*); (c) Bachman explicitly referred to the due process clause and the involuntariness of his pleas several times; and (d) Bachman's facts were well within the mainstream of due process adjudication. While the *Sullivan v. Fairman* test implies that any of these four factors may indicate that a state appellate court was put on fair alert of the constitutional claim at issue here, all four are present here. Thus, Bachman cannot be considered to have waived his involuntariness claim by failing to present it to the state appellate court in a timely fashion. This court may now, therefore, consider the merits of that claim, as well as the other due process claims admittedly not waived, the violation of the fifth amendment and the ineffective assistance of counsel claims.

**The Merits of the Constitutional Claims**

*The Involuntariness of the Guilty Pleas*

As should be clear by now, Bachman's first constitutional claim, in full, is that due process was violated because his pleas of guilty were involuntary as a matter of law after he had been incorrectly advised of his potential maximum sentence. Fortunately, the case law in this area is straightforward and so the result is not difficult to reach. The Supreme Court explained in *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973), that a defendant who pleads guilty upon the advice of counsel may attack the voluntary and intelligent character of the guilty plea only by showing that the advice he received was from ineffective counsel. More recently, in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court articulated a two-part test for evaluating claims of ineffective assistance of counsel. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88, 104 S.Ct. at 2064–65. In addition, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. The reasoning and holdings of *Tollett* and *Strickland* were expressly reaffirmed in the Supreme Court's recent decision in *Hill v. Lockhart*, —— U.S. ——, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). In *Hill*, the Court held the two-part *Strickland* test applicable to a habeas corpus petitioner who had claimed his state court plea of guilty was involuntary, precisely the issue being litigated here. There is one small difference between *Hill* and this case which turns out to be immaterial. In *Hill*, the petitioner claimed his plea was involuntary because his counsel was ineffective. Here, Bachman claims his pleas were involuntary because he was misinformed as to the potential sentences. However, under *Tollett*, a defendant may establish involuntariness only by showing he was advised by ineffective counsel. Thus, for Bachman's claim of involuntariness to be cognizable at all, it must be construed as arising from an allegation of ineffective counsel, which is essentially what Bachman is saying when he claims he was misinformed on the law. Given this, the question then becomes whether counsel's sentence misinformation demonstrates unreasonable incompetence and whether Bachman has suffered prejudice from that incompetence.

Because the court finds there to be no prejudice resulting from Bachman's lawyer's erroneous legal advice, the court will not address the question of whether the giving of that advice fell below some objective standard of professional competence. Bachman offers several types of prejudice which he feels he has suffered, only three of which seem to be distinct, and none of which this court finds persuasive. First, Bachman argues that the misinformation on the possible maximum sentences for the thirty-two counts of aggravated kidnapping made him unable to correctly assess the benefit to be gained from pleading guilty or the risks associated from going to trial. Second Bachman suggests that because the maximum penalty for deviate sexual assault is in fact 30 years, he may have viewed a plea of guilty on sexual assault as

interchangeable with one on aggravated kidnapping. Third, Bachman contends he did not receive what he bargained for in his guilty plea. Of the thirty-eight Class X felonies he thought were being dismissed in return for his pleas of guilty, thirty of them turned out to be only Class 1.

 Although the misinformation is unquestionably regrettable, this court must conclude that these arguments of prejudice are insufficient to satisfy the prejudice test as formulated by the Supreme Court in *Strickland v. Washington*. The test requires the petitioner to show a reasonable probability that but for the erroneous sentence advice, result of the proceedings would have been different. In *Hill*, the court gave meaning to this test in the context of a defendant who had pled guilty after receiving erroneous sentence advice. It denied the petition for habeas corpus because:

> Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial. He alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty.

*Hill v. Lockhart,* —— U.S. ——, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). An almost identical conclusion is warranted here. Bachman alleges nowhere in his petition that had he known the thirty-two kidnapping counts carried maximum sentences of 15 instead of 30 years, he would have preferred to stand trial on all 59 counts and its attendant risks than accept the plea bargain of five counts which the prosecutor offered and Bachman ultimately accepted. Indeed, even were such an allegation made, it might be difficult to prove. In general, a defendant who believes he could be sentenced at trial to an extremely lengthy prison term might plead guilty in the hope of a short sentence, where he would not have pleaded guilty had he reason to believe he was only exposed to the risk of a short sentence at trial. Those are hardly the facts here. To employ a modified version of respondent's argument, Bachman pleaded guilty thinking that his exposure at trial would be to a sentence of 1590 years while the plea afforded him maximum exposure of only 135 years.[5] Had Bachman and the prosecutor been correctly advised as to the aggravated kidnapping statute, Bachman would have had to choose between a trial exposure of 1110 years and a plea bargain of 135 years, assuming that the prosecutor would have insisted on a new plea combination which posed a sentence exposure equal to the old.[6] It seems almost beyond the pale to suggest the reduced trial exposure to 1110 years would have inclined Bachman to insist on his trial rights when he was unwilling to do so when the exposure was 1590 years.

 In any event, though, the court is not rejecting Bachman's claim of involuntariness because of the implausibility that

---

5. Under Bachman's erroneous view of the law for aggravated kidnapping, he thought that if he went to trial on all 59 counts, he would be potentially exposed to a maximum consecutive sentence of (10 counts of deviate sexual assault × 30 years per count) + (32 counts of aggravated kidnapping × 30 years per count) + (7 counts of indecent liberties × 15 years per count) + (7 counts of armed violence × 30 years per count) + (3 counts of imtimidation × 5 years per count) = 1590 years. Again, under the erroneous view of the law, the plea bargain Bachman accepted exposed him to a maximum potential consecutive sentence of only (2 counts of deviate sexual assault × 30 years per count) + (2 counts of aggravated kidnapping × 30 years per count) + (1 count of indecent liberties × 15 years per count) = 135 years.

6. Bachman does not contend that the prosecutor would have offered a plea combination with a more favorable sentence, and indeed it is difficult to see how he could. If the prosecutor had been corrected of his erroneous view of the kidnapping law, he would have realized his original plea bargain only exposed Bachman to a maximum sentence of (2 × 30) + (2 × 15) + (1 × 15) = 75 years. Quite plausibly, the prosecutor, once alerted to this less prejudicial sentence potential, might have insisted on a new plea combination, such as one involving twice as many pleas to aggravated kidnapping, to accommodate the fact that the maximum potential sentence on each one was only half as long as he had previously thought. In any event, Bachman does not even allege otherwise.

Bachman would have preferred risking trial in this case had he known his true sentence exposure. The claim of involuntariness is rejected because Bachman does not even allege in his petition, or argue in the briefs, that had his lawyer correctly advised him and the trial court of the kidnapping sentence potential, the result of the proceedings would likely have been different. In this case, an allegation of a "different" result could have been achieved had Bachman asserted he would have preferred the risks to trial to accepting the sentencing risks attendant to his original plea combination as he then understood it. The allegation of a different result could also have been achieved had Bachman asserted that the prosecutor would have acquiesced in a plea combination with a less prejudicial potential sentence than was applicable to the plea combination as originally understood. Bachman, however, asserts neither.[7]

What Bachman does argue is that the erroneous advice prevented him from correctly assessing the risks of going to trial versus pleading guilty. But this argument fails to address the relevant question, for it falls short of telling the court whether, had Bachman correctly known those risks, he would likely have insisted on going to trial before accepting the prosecutor's plea bargain, or that he would have been able to talk the prosecutor into a less prejudicial plea bargain.

Also, as Bachman argues, Bachman may well have believed that a plea of guilty to deviate sexual assault was interchangeable with a plea to aggravated kidnapping, as he thought they carried the same potential sentences. But one cannot conclude from this alone that a corrected view of the sentence potential would have led Bachman to a different plea result. For even if, under a corrected view of the law, Bachman would no longer regard the counts as interchangeable and therefore might not have pleaded to aggravated kidnapping as readily as to deviate sexual assault, there is again no allegation that the prosecutor would have been willing to settle for a plea bargain less prejudicial to Bachman than the one all parties thought he actually accepted. Without such an argument, *Strickland* prejudice is lacking. Finally, Bachman's argument that he incurred prejudice by not receiving "what he bargained for" is also unavailing. Bachman, again, fails to go the extra step and allege that, had he known the true nature of what he was receiving in his plea bargain, he would have preferred going to trial or could have worked out a more advantageous bargain with the prosecutor.

Accordingly, because there is no allegation that the result of the sentencing proceeding would probably have been different had his lawyer been correctly informed as to the possible maximum sentence for aggravated kidnapping, Bachman's contention that the sentencing advice rendered his counsel ineffective, and therefore his pleas involuntary, cannot serve as a ground for the granting of a writ of habeas corpus.

*The Denial of Fifth Amendment Rights*

Bachman's second ground in his petition is that the sentence he received was fundamentally unfair, in violation of due process, because he was denied his fifth amendment right of the privilege against self-incrimination in the sentencing process. Specifically, Bachman argues that (1) the court-ordered psychological examination of Bach-

---

**7.** Bachman does not appear pro se in his petition, but is represented by counsel. Thus, there is no need to apply rules of extremely liberal construction of the allegations in the petition. Indeed, even if the court were to liberally construe the allegations here to include a claim that the "result would have been different," Bachman may nevertheless be precluded from an evidentiary hearing to test the veracity of those allegations. On the motion to withdraw the guilty pleas in state trial court, the trial judge offered Bachman's new (and present) counsel the opportunity for an evidentiary hearing on these matters which counsel declined. Neglect to develop material facts at a state court hearing, unless excused for some reason, will preclude a petitioner from a chance to develop those facts at a federal evidentiary hearing. *See Townsend v. Sain,* 372 U.S. 293, 317, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963); *Thomas v. Zant,* 697 F.2d 977, 982–83 (11th Cir.1983); *but see Walker v. Wilmot,* 603 F.2d 1038, 1042 (2d Cir. 1979).

man was administered without the issuance of *Miranda* warnings to Bachman, (2) Bachman made incriminating statements about his prior history of drug use to the psychologist during the exam, and (3) these statements were included in the report submitted to the trial court. Therefore, Bachman concludes, the sentence he received was imposed in violation of the fifth amendment. Respondent concedes that Bachman has a fifth amendment privilege during sentencing investigation. *See* Respondent's Opening Brief at 26. The disputed issue is whether Bachman is constitutionally entitled to receive *Miranda* warnings from the government[8] before being examined by a court-appointed psychologist whose examination may be used by the court in sentencing. The answer, it turns out, depends on whether the law of *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), governs this case.

In *Estelle v. Smith*, a Texas court ordered a psychiatric examination of a criminal defendant, charged with murder, to determine his competency to stand trial. The examining doctor determined that the defendant was competent, and thereafter he was convicted. A separate sentencing proceeding was then held before the same jury as required by Texas law. At this proceeding, the jury must resolve three critical issues to determine whether the death sentence will be imposed. One of the issues the jury had to determine was whether the defendant would constitute a continuing danger to society. At the sentencing hearing, the doctor who had conducted the pretrial psychiatric examination was allowed to testify for the state over counsel's objection that his name did not appear on the state's witness list. His testimony was based on the pre-trial examination and stated in substance that respondent would be a danger to society. The jury resolved the dangerousness issue, and others, against the defendant and imposed the death penalty.

The Court held that the psychiatrist's testimony as to incriminating statements received from the defendant could not be admitted if, as was the case there, no *Miranda* warnings had preceded the psychiatrist's inquiry. 451 U.S. at 469, 101 S.Ct. at 1876. In reaching this conclusion, the Court reviewed the rationale of *Miranda* itself:

> *Miranda* held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Thus, absent other fully effective procedures, a person in custody must receive certain warnings before any official interrogation, including that he has a "right to remain silent" and that "anything said can and will be used against the individual in court." The purpose of these admonitions is to combat what the Court saw as "inherently compelling pressures" at work on the person and to provide him with an awareness of the Fifth Amendment privilege and the consequences of foregoing it, which is the prerequisite for "an intelligent decision as to its exercise." (citations omitted, quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 467–69, 86 S.Ct. 1602, 1612, 1624–25, 16 L.Ed.2d 694 (1966).

451 U.S. at 466–67, 101 S.Ct. at 1875. The Court then explained that the concerns which prompted the Court to establish *Miranda* rights applied with equal force to the defendant Smith:

> Respondent was in custody at the Dallas County Jail when the examination was ordered and when it was conducted. When Dr. Grigson went beyond simply reporting to the court on the issue of competence and testified for the prosecution at the penalty phase on the crucial issue of respondent's future dangerousness, his role changed and became essen-

---

8. The question of whether Bachman is constitutionally required to receive Miranda warnings from his own counsel in the absence of government-offered warnings is analyzed in the next section of this opinion which addresses the question of whether counsel's failure to warn rendered counsel constitutionally ineffective.

tially like that of an agent of the State recounting unwarned statements made in a postarrest custodial setting. During the psychiatric examination respondent assuredly was "faced with a phase of the adversary system" and was "not in the presence of [a] perso[n] acting solely in his interest." Yet he was given no indication that the compulsory examination would be used to gather evidence necessary to decide whether, if convicted, he should be sentenced to death. He was not informed that, accordingly, he had a constitutional right not to answer the questions put to him.

*Id.* at 467, 101 S.Ct. at 1875 (quoting *Miranda v. Arizona,* 384 U.S. 436, 469, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966); brackets in original). Significantly, though, the Court noted, "[o]f course, we do not hold that the same fifth amendment concerns are necessarily presented by all types of interviews and examinations that might be ordered or relied upon to inform a sentencing decision." *Id.* at 469 n. 13, 101 S.Ct. at 1876 n. 13.

After carefully examining the issue, this court is of the view that *Smith* is not applicable to the facts of this case. As an initial observation, it is noteworthy that most courts have decided to limit the holding of *Smith* to those sentencing proceedings in which, unlike here, the government bears a burden of proof relating to a critical aggravating factor such as dangerousness. When there is no particular burden of proof to be met, and the court is imposing a sentence in its discretion as was done here, the fifth amendment concerns of self-incrimination involved in *Smith* are apparently no longer implicated. *See, e.g., Witt v. Wainwright,* 714 F.2d 1069 (11th Cir. 1983), *reversed on other grounds,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); *Baumann v. United States,* 692 F.2d 565 (9th Cir.1982); *Battie v. Estelle,* 655 F.2d 692, 698 (5th Cir.1981); *cf. Cape v. Francis,* 741 F.2d 1287 (11th Cir.1984) (*Smith* only applies to cases where government bears a burden of proof on a sentencing matter; court relies on *Smith*'s sixth amendment analysis), *cert. denied,* — U.S. ——, 106 S.Ct. 281, 88 L.Ed.2d 245 (1985);

*United States v. Jones,* 640 F.2d 284, 288 (10th Cir.1981) (holding that the absence of the possibility of capital punishment distinguishes *Smith* ); *but cf. Finney v. Rothgerber,* 751 F.2d 858 (6th Cir.) (*Smith* held applicable to discretionary sentencing, though the error in this case was harmless), *cert. denied,* — U.S. ——, 105 S.Ct. 2048, 85 L.Ed.2d 310 (1985); *see also United States ex rel. Cyburt v. Lane,* 612 F.Supp. 455, 463 (N.D.Ill.1984) (Getzendanner, J.) (taking note to the weight of authority distinguishing *Smith* on this point but reserving judgment).

The court today need not expressly decide whether this basis for distinguishing *Smith* should be adopted here, for there is another, more compelling reason for distinguishing *Smith* on the facts of this case. Of critical importance to the *Smith* holding was the fact that the defendant, during his psychiatric examination, was " 'faced with a phase of the adversary system' and was 'not in the presence of [a] perso[n] acting solely in his interest.' " *Estelle v. Smith,* 451 U.S. at 467, 101 S.Ct. at 1875 (quoting *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); brackets in original). Thus, it is custodial interrogation, outside the presence of counsel, which creates the inherently compelling measures that oblige the government to execute a defendant's fifth amendment privilege by reciting the *Miranda* warnings. *See id.* The facts of this case indicate that the psychiatric examination was not the sort of custodial interrogation which subjected Bachman to the adversarial pressures of the government in the absence of a person acting solely in his interest. While it may be true, as Bachman asserts, that the psychiatric examination was conducted while he was in "custody," the label of custody is not enough to render the examination inherently compelling. The psychiatric examination was ordered by the state trial judge in open court and in the presence of Bachman's attorney. Transcript of Dec. 7, 1982 at 3–7. Bachman's attorney knew the purpose of the examination was to examine the likelihood that Bachman would pose a danger to the

community. He also knew that the interview would be conducted at the George Lewis Institute by a certain date. *Id.* While the record does not indicate whether Bachman's counsel was permitted to attend the examination, as just indicated, the record is clear that counsel knew the purpose, location and timing of the meeting. Counsel therefore could easily have conferred with Bachman and advised him of his rights in advance of the "custodial" examination. By contrast, in the typical *Miranda* situation, there is no opportunity for a defendant to confer with counsel prior to the custodial examination. And in *Smith,* although the defendant had already obtained counsel, counsel there had not been made aware that the psychiatrist, in the course of conducting a neutral competency examination, would begin eliciting information that could later be used at sentencing to impose the death sentence. Therefore, the counsel in *Smith* had no opportunity to act on the defendant's behalf prior to the custodial examination. This put "inherently compelling pressures" into the examination even though, as a formal matter, the defendant already had counsel. Here, even assuming the psychiatric examination was "custody," counsel knew about it in advance and knew the type of questioning that might be pursued. Counsel therefore had a meaningful opportunity to prepare Bachman for the examination by advising him that incriminating questions might be asked, and that Bachman had a privilege not to incriminate himself.[9] In such a situation, the examination is no longer "inherently coercive," *see Granviel v. Estelle,* 655 F.2d 673, 683 n. 17 (5th Cir.1981) (noting in dictum that *Smith* does not control when defendant's attorneys are aware of purpose of psychiatric examination), *cert. denied,* 455 U.S. 1003, 1007, 102 S.Ct. 1636, 1644, 71 L.Ed.2d 870, 875 (1982), so it is unnecessary to burden the government with an obligation to advise Bachman of those same rights. *Cf. Roberts v. United States,* 445 U.S. 552,

560, 100 S.Ct. 1358, 1364, 63 L.Ed.2d 622 (1980) (*Miranda* warnings not required outside "inherently coercive" contexts).

Thus, because Bachman's counsel knew of and could have prepared Bachman for the psychiatric examination, Bachman was not subjected to the type of one-sided custodial interrogation which would require the government to advise Bachman of his fifth amendment rights. Therefore, the government's failure to do so was not error.

### Ineffective Assistance of Counsel

Bachman's final proffered ground for relief is his claim that the quality of his legal representation was so poor that he was denied the effective assistance of counsel, guaranteed by the due process clause as it incorporates the sixth amendment. Bachman points to three errors trial counsel made which Bachman contends were so serious they deprived him of effective counsel and a reliable and fair trial. First, Bachman reintroduces his position that his trial counsel failed to accurately inform him of the maximum possible sentence for aggravated kidnapping. This is a repeat of the argument raised earlier. The earlier argument was that the failure of counsel to correctly inform Bachman of the sentencing risks rendered his plea involuntary. The court explained earlier that this argument amounted to a claim that Bachman's counsel was ineffective. The court held that since no actual prejudice was shown to have resulted from the inaccurate advice, a claim for ineffective assistance of counsel could not be based on that error.

The second error committed by counsel was counsel's failure to warn Bachman that any statements Bachman made to the psychiatrist could be used against him. This is not a repeat of the argument of the last section of this opinion since the position Bachman took in that section was that the *government's* failure to administer *Miranda* warnings constituted a violation of

---

9. Bachman does not assert a right to have a lawyer present during the psychiatric examination, and such a right may not exist. *See Estelle v. Smith,* 451 U.S. at 471 n. 14, 101 S.Ct. at 1877

n. 14. In any event, the right would have to come from the sixth, not the fifth amendment. *See id.*

the fifth amendment. The third and final error alleged is that at the sentencing hearing trial counsel failed to object to some inadmissible evidence consisting of poems allegedly written by Bachman, and that counsel failed to object to the prosecutor's improper argument relating to those poems.

The court has already reviewed the two-part test, articulated in *Strickland v. Washington,* for evaluating claims of ineffective assistance of counsel. As was done in the first section of the opinion, the court will only address the second prong of the *Strickland* test, the prejudice prong. To meet that prong of the test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

■ Because the insubstantiality of the first error has already been explained, the court will address the second error Bachman asserts relating to his trial counsel's failure to advise him of his fifth amendment rights prior to the psychiatric interview. It is difficult to locate the prejudice to Bachman here. No allegation or argument is made even suggesting that Bachman would probably not have revealed the incriminating information about his prior drug use had he known he did not have to. It would not have been difficult for Bachman to at least present an affidavit to that effect, but he does not. More importantly, though, the transcript from the sentencing hearing shows that the admission on drug use played at most an insignificant part in the trial judge's sentencing determination. At the conclusion of the sentencing hearing at which the judge imposed the original, and subsequently reduced, sentence, the judge listed those factors which played a role in his sentencing:

I considered the pre-sentence report [prepared by probation officer Riggs] and the statement of facts stipulated to at the time of the pleas of guilty [regarding how the crimes were committed] ... I've also considered ... the testimony of the victim of the crime and note, of course, at the time of the offense both of the victims were fourteen years old ... I have considered the fact that you are 24 years old ... That you are in reasonably good health. And as pointed out by [trial counsel], Dr. Lewis [the psychologist] indicates that you are innately bright; however, you do have a borderline personality disorder. I think that goes without saying ... I have considered that your conduct in the offenses, from all of the aforesaid, threatens serious physical harm. There was no physical harm, as such ... However, I think the Court also has to consider that your conduct did threaten and in fact did cause serious emotional and psychological harm—that, I don't think there is any question about that—to two 14 year old girls. And this emotional and psychological consequences to them will probably last them longer than either you or I recall ... Your prior criminal history ... as part of the factors which the Court must consider in aggravation and mitigation, was the one incident which apparently was a disorderly conduct. However, that's the only conviction. But, by reading the information that's available to me, there was prior use and apparent abuse of both drugs and alcohol over a long period of time ... [C]ertainly the Court can consider this anti-orderly behavior on your part.

Transcript dated Feb. 10, 1983 at 90–93. As the above list reveals, there were numerous factors the court stated it considered in its sentencing determination such as Bachman's personality disorder, his threats of serious physical harm to two 14 year old girls, the emotional consequences of those threats, and his prior conviction for disorderly conduct. Interestingly, the judge did not actually state he considered the prior drug use in his sentencing determination; rather he stated only that the prior drug use is something that he merely "certainly can consider." While this may simply reflect a semantic technicality, the drug use factor was the only one in the preceding list which the judge said he "can" consider; the judge stated he did or "must" consider the others.

In any event, even if the drug use was in fact considered by the judge, it is certainly unlikely that the absence of the psychologist's reference to drug use would have altered the judge's overall sentence. The judge's own statements reflect that he placed primary emphasis on the age of the victims and the psychological effect of the crimes on them. Of the many other factors listed, prior drug use seems to have added virtually nothing to what the judge already had before him regarding Bachman's antisocial behavior. The judge knew of the facts of the present crime, the prior disorderly conduct conviction, and the psychologist's conclusion that Bachman had a borderline personality disorder. None of these factors directly or indirectly rely on Bachman's admissions of prior drug use.[10]

Furthermore, the judge also learned of Bachman's prior drug use through Bachman's admissions to Officer Riggs, who the parties seem to agree, administered *Miranda* -type warnings to Bachman and then included the subsequent admissions in his presentence report. Although it might be argued that Riggs' *Miranda* warnings were not adequate to protect Bachman once Bachman had "let the cat out of the bag" with his unwarned admissions to the psychologist, the Supreme Court has squarely rejected this idea. In *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the Court held that warned admissions may not be excluded from evidence simply because they are received subsequent to unwarned but voluntary admissions. It is not enough that the defendant made his second admission while laboring under the misapprehension that since he had already once let the cat out of the bag, his fate was sealed. *See id.* 105 S.Ct. at 1294–95. Therefore, even if drug use played a role in the sentencing determination, the admissions were properly before the judge by way of Riggs' presentence report which included warned admissions of Bachman's prior drug use.

In short, then, Bachman cannot on this record show that but for the admissions of drug use to the psychologist, the judge's sentence would probably have been different, Drug use played at best a minor role in the original sentencing of Bachman and to the extent that it played any role at all, the admissions on drug use were properly before the court through Riggs' report. By extension, when the judge later reduced the sentence solely because it exceeded the statutory range permissible for aggravated kidnapping, the drug use admissions, again, could not have played any more than the same insignificant role. Thus, Bachman has failed to show any *Strickland* prejudice resulting from this second error of trial counsel.

■ The third and final error Bachman asserts was the failure of trial counsel to object to the admission of evidence of poems allegedly written by Bachman, and the failure to object to improper argument of the prosecutor relating to those poems. This error can be easily disposed as clearly non-prejudicial. In ruling on a motion to withdraw the guilty pleas brought by Bachman's present counsel before the state trial court, the judge expressly found that the poem evidence played no part in his sentencing determination:

> The poems even themselves were admittedly written by the defendant, although they were not relevant as far as this Court was concerned. And they were alluded to by both parties and, as a matter of fact, the defendant offered in addition to the poems that were offered by the State other writings of the defendant. For whatever purpose they were offered, again I didn't consider them relevant to the issues before me.

Transcript dated June 3, 1983 at 12. Given this, there can be no merit to any argument that but for the admissions of the poem evidence Bachman would have received a

---

**10.** The conclusion of personality disorder itself does not appear to depend on the psychologist's awareness of Bachman's prior drug use; the prior drug use appears relevant only to the psychologist's assessment of the *causes* of the personality disorder. *See* Psychological Assessment Report at 6.

different sentence. There is, therefore, no prejudice to this error either.

### Conclusion

Petitioner Bachman's grounds for a writ of habeas corpus, considered on the merits, are rejected. Summary judgment on the petition for the writ is granted in favor of the respondent.

It is so ordered.