**UNITED STATES of America ex rel. Joseph MILLER, Petitioner,**

**v.**

**Michael O'LEARY, Warden, Stateville Correctional Center, and Neil F. Hartigan, Attorney General of Illinois, Respondents.**

**No. 84 C 348.**

United States District Court, N.D. Illinois, E.D.

Dec. 15, 1986.

---

**6.** Fed.R.Civ.P. 9(b) permits the mental state to be pleaded generally.

Patricia A. Brandin, Jeffrey Heller, Chicago, Ill., for respondents.

Terence M. Madsen, Asst. Atty. Gen., Chicago, Ill., for petitioner.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This habeas action was initiated by the petitioner *pro se* on January 17, 1984. On October 17, 1984, my former colleague, Judge McMillen, granted the respondents' motion for summary judgment on two of the petitioner's claims for relief but reserved ruling on the question whether petitioner was denied his right to a fair and impartial jury by the State's use of peremptory challenges. *United States ex rel. Miller v. O'Leary*, No. 84 C 348 (N.D.Ill. Oct. 17, 1984). The court appointed counsel to conduct a "searching inquiry" into the matter. *Id.* slip op. at 2. After the judge's retirement earlier this year, the case was reassigned to me. On March 3, 1986, I indicated to the parties that I would not rule on the petitioner's remaining claim until the Supreme Court rendered its decision in *Batson v. Kentucky*, which was then pending. 471 U.S. 1052, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1985) (order granting certiorari). That decision was handed down by the Court on April 30, 1986. —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Both sides have since moved for summary judgment.[1]

## FACTS

The respondents have neither submitted a statement of material, nondisputed facts in support of their motion for summary judgment nor offered this court a "statement of genuine issues" in opposition to petitioner's motion for summary judgment. Accordingly, the facts alleged in petition-

---

1. Petitioner has submitted both a motion for summary judgment and a supplemental motion for summary judgment raising alternative arguments. For ease of discussion, I have treated all of petitioner's arguments as if they were raised in one motion.

er's "statement of material facts" are deemed admitted by the respondents and accepted as true by this court. *See* N.D. Ill.R. 12(e) and 12(f). The following is a brief summary of those facts.

## I. The State Court Proceedings

Following a trial by jury, the petitioner was convicted of murdering William Staray, a white male found dead in the front seat of a Corvette on the south side of Chicago. Petitioner was also charged with and convicted of attempted armed robbery and armed violence predicated on the robbery. He was sentenced to 35 years on the murder count, 30 years on the armed violence count, and 15 years on the attempted robbery count.[2]

The venire producing the jury that convicted petitioner originally consisted of 69 jurors, of whom seventeen were black and the remaining were white. Because of the seriousness of the charges, both sides were allowed twenty peremptory challenges. The State used fourteen of its challenges to strike blacks from the pool of potential jurors; it used two other challenges to strike whites. Since three blacks had been removed for cause by the trial court, the result was an all-white jury. The two alternate jurors were also white.[3]

During the voir dire proceedings, defense counsel objected twice to the State's apparent use of peremptory challenges to exclude black jurors. On both occasions, the court took no action on the objections. Defense counsel reiterated its objection in its post trial motion, again to no avail.

On appeal, the petitioner claims to have argued that the exclusion of black jurors violated both the Illinois and United States Constitutions by depriving him of due process of law and an impartial jury. *See* Pet. Statement of Material Facts, at ¶ 11; Pet. Mem. in Support of Summary Judgment, at 4–5. Although the claim was made that "the Illinois and United States Constitutions require that his conviction be reversed and remanded for a new trial," petitioner's characterization of his argument before the Illinois Appellate Court is not quite accurate. Pet.Ex. 7, at 9.

There, the petitioner eloquently argued that "racial bias is a tragic reality of our society and if prosecutors are free to form a jury based on race, bias will taint the jury's ability to fairly evaluate evidence."[4] Pet.Ex. 7, at 8–9. While noting that both the Illinois and United States Constitutions provide for the right to trial by an impartial jury, the petitioner argued that the test set forth by the United States Supreme Court in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), was "neither available nor realistic for the vast majority of criminal defendants." Pet.Ex. 7, at 4–5. Accordingly, petitioner called for "adoption of a State, as opposed to Federal, standard for a defense allegation of discriminatory jury selection" and urged the appellate court to follow dicta in other Illinois cases adopting the test set forth by the California Supreme Court in *People v. Wheeler*, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978). Pet.Ex. 7, at 4–7. *See*

2. Although not explicitly spelled out in the statement of facts, it appears from the parties' papers that the petitioner is black.

3. Five additional prospective jurors were called for the purpose of selecting alternates. Of these prospectives, one was black; he was dismissed by the trial court for cause.

4. The unquestioned assumption here, of course, is that jurors' backgrounds significantly affect the verdicts they reach. That belief is widely assumed, but as Holmes once quipped, "certitude is not the test of certainty." O.W. Holmes, *Collected Legal Papers*, 311 (1918). In fact, empirical research on the question, including some highly realistic and controlled recent studies,

fairly uniformly report "no simple relationship" between individual characteristics and initial verdict preferences. *See* Hastie, Penrod, and Pennington, *Inside the Jury* 237 (1983); Simon, *The Jury: Its Role in American Society* 45–46 (1980) (observing that an in-depth review of the literature showed "only slight and not consistent differences in the verdicts jurors with different class, ethnic, and sexual characteristics reached"). Moreover, the social science literature is "unanimous" in finding that the quantity and quality of evidence is the most powerful influence on jury decisionmaking. Hastie, Penrod, and Pennington, *Supra*, at 123; Saks and Hastie, *Social Psychology in Court* 68 (1977).

*also* Pet.Ex. 8, at 7–10 (Pet. Reply Brief before the Appellate Court).

On March 11, 1982, the Appellate Court rejected petitioner's argument concerning the State's use of peremptories. Relying on state law authorities, the Court held:

Although the practice of using peremptory challenges to strike all blacks from the jury has been condemned, the evidence of purposeful exclusion must be apparent, and it is the responsibility of the trial court to determine whether the State has properly exercised its peremptory challenges. In the case at bar, the defense brought its contention to the trial court's attention. The trial court did not find the State was exercising its peremptory challenges improperly, and, on this record, we cannot say that the trial court abused its discretion.

Pet.Ex. 9 at 8–9 (*People v. Miller*, 104 Ill.App.3d 1205, 63 Ill.Dec. 296, 437 N.E.2d 945 (1982) (citations omitted)). The Appellate Court vacated the judgment of conviction for attempted armed robbery, but affirmed the trial court in all other respects.

Petitioner did not appeal his decision to the Illinois Supreme Court. His petition for certiorari to the United States Supreme Court was denied on August 23, 1984. *Miller v. Illinois*, 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983). Justices Brennan and Marshall dissented from the Court's denial to hear the case. *Id.*, 461 U.S. at 963, 103 S.Ct. at 2439. Justices Blackman and Powell joined Justice Stevens' opinion calling for "further consideration of the substantive and procedural ramifications of the problem by other courts...." *Id.* 461 U.S. at 962, 103 S.Ct. at 2438.

## II. Prior Proceedings on Petitioner's Federal Habeas Corpus Claims.

As noted at the outset of this opinion, the respondents' motion for summary judgment was granted in part and denied in part on October 17, 1984. On February 13 of the following year, in response to a motion to reconsider the denial of summary judgment on the peremptory challenge issue, Judge McMillen held that petitioner "did not waive his right to a *Swain v. Alabama* decision." *Miller*, slip op. at 2 (N.D.Ill. Feb. 13, 1985).

In response to further motions, however, the court held the *Swain* claim was barred on exhaustion grounds. It reasoned that a *Swain* claim raised a different legal theory, dependent on a different order of proof, than a claim for discriminatory use of peremptories in a single case. *Miller*, slip op. at 2 (N.D.Ill. June 3, 1985) (citing *United States ex rel. Nance v. Fairman*, 707 F.2d 936, 940 (7th Cir.1983)). Since both parties conceded that the petitioner's appeal to the Appellate Court "sought to establish a violation of right to fair trial by applying some test other than that laid down in *Swain v. Alabama*," Judge McMillen concluded that the petitioner could not raise a systematic discrimination theory in federal court without first exhausting the issue at the state court level. *Id.* at 1. *See also Miller*, Minute Order (N.D.Ill. Sept. 6, 1985) (denial of reconsideration motions concerning June 3, 1985 order).

These rulings left outstanding petitioner's claim that the prosecution used its peremptories unconstitutionally and discriminatorily in petitioner's case. The court, aware of the Second Circuit's opinion in *McCray v. Abrams*, 750 F.2d 1113 (2d Cir.1984) (later vacated and remanded, —— U.S. ——, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986)), and the Supreme Court's intention to consider the issue in *Batson*, ordered the parties to proceed upon the single case discrimination theory.[5]

## DISCUSSION OF LEGAL ISSUES

The petitioner essentially presents three alternative arguments which he claims entitled him to relief. Stated most briefly, these claims allege (1) that the State violat-

---

5. The evidence presented by the petitioner that the State used its peremptory challenges on the basis of race alone at his trial is undisputed. The petitioner also submits evidence of systematic discrimination by the prosecutor as mandated by *Swain*. That evidence is uncontradicted as well.

ed petitioner's constitutional rights by its use of peremptory challenges in his individual case, (2) that the State's use of peremptories unconstitutionally impaired petitioner's Sixth Amendment right to an impartial jury, and (3) that the State's discriminatory exclusion of black jurors violated petitioner's Fourteenth Amendment rights as articulated by *Swain v. Alabama.* Although I sympathize with petitioner's well-argued positions, I cannot accept them. I take up the questions in turn.

## I. The Batson or Single Case Theory

In *Batson,* the Supreme Court overruled *Swain* to the extent that the earlier case required a challenger of a prosecutor's use of peremptories to prove systematic exclusion of blacks over a number of cases. —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In *Allen v. Hardy,* however, the Court held that *Batson* would not be applied retroactively. —— U.S. ——, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986). The *per curium* opinion stated:

> The rule in *Batson v. Kentucky* is an explicit and substantial break with prior precedent. In *Swain v. Alabama,* the Court held that, although the use of peremptory challenges to strike black jurors on account of race violated the Equal Protection Clause, a defendant could not establish such a violation solely on proof of the prosecutor's action at his own trial. *Batson* overruled that portion of *Swain....*

106 S.Ct. at 2880. Given this dramatic break with past precedent, the Court viewed retroactive application of the new rule as inappropriate considering the extent of reliance on *Swain* by state officials and the effect of retroactive application on the administration of justice.

■ Petitioner argues that he should not be precluded by *Allen* from making a *Batson* showing because his case was "clearly a precursor for *Batson*" and that he "should not be denied his constitutional rights simply by unfortunate timing and the Court's reluctance to consider the issue when the petitioner first raised it in 1983...." Pet. Reply Mem. in Support of Motion for Summary Judgment, at 4, 5. He also suggests that the policies underlying *Allen* have no force when viewed in the context of his case and that their application to him would be anomalous. *Id.*

Such anomalous results, however, are inherent in any decision changing the law prospectively. The *Allen* court explicitly concluded that "*Batson* should not be applied retroactively on collateral review of convictions that became final before our opinion was announced." 106 S.Ct. at 2880. I will not obscure the Supreme Court's bright line in the manner petitioner suggests.

## II. The Sixth Amendment Impartial Jury Theory

In an apparent attempt to alleviate the widely perceived injustice of *Swain,* several courts prior to *Batson* held that a prosecutor's use of peremptory challenges to exclude blacks from petit juries violated the Sixth Amendment's cross-sectionality requirement articulated in *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). *See McCray v. Abrams,* 750 F.2d 1113 (2d Cir.1984), *vacated and remanded sub nom Abrams v. McCray,* —— U.S. ——, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986); *Booker v. Jabe,* 775 F.2d 762 (6th Cir.1985), *vacated and remanded sub nom Michigan v. Booker,* —— U.S. ——, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986). Although *Batson* expressly declined to consider this question, 106 S.Ct. at 1716, n. 4, the Supreme Court vacated the *McCray* and *Booker* holdings and remanded the two cases for reconsideration in light of *Batson* and *Allen.*

Petitioner contends that despite this action, *McCray* and *Booker* retain their validity. That contention is untenable in light of the Supreme Court's decision in *Lockhart v. McCree,* —— U.S. ——, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). In that case, the Court of Appeals for the Eighth Circuit had held that removal for cause of certain prospective jurors opposed to the death penalty at the liability phase of a bifurcat-

ed capital trial violated a defendant's right under the Sixth and Fourteenth Amendments to be tried by an impartial jury selected from a cross-section of the community.[6] *Id.* 106 S.Ct. at 1761–62.

In reversing that holding, the Supreme Court specifically focused on the Court of Appeals' interpretation of the cross-sectionality requirement. That requirement was first spelled out by the court in *Taylor v. Louisiana,* which held unconstitutional state conduct preventing pools of potential jurors from mirroring the population at large through the systematic exclusion of distinctive groups in the community. 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). In *Lockhart,* the Court expressed its belief that the principles articulated in *Taylor* should not be applied to the selection of petit juries It stated:

> We have never invoked the fair cross-section principle to invalidate the use of either for-cause or peremptory challenges to prospective jurors, or to require petit juries, as opposed to jury panels or venires, to reflect the composition of the community at large. The limited scope of the fair cross-section requirement is a direct and inevitable consequence of the practical impossibility of providing each criminal defendant with a truly "representative" petit jury.... We remain convinced that an extension of the fair cross-section requirement to petit juries would be unworkable and unsound, and we decline [the] invitation to adopt such an extension.

*Lockhart,* 106 S.Ct. at 1764–65.

█ Petitioner here argues that, contrary to the statement quoted above, the Supreme Court has, in fact, extended the Sixth Amendment to the selection of jurors on petit juries. He notes that in *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), the court held unconstitutional a state statute excluding for cause from petit juries all prospective

jurors expressing any scruples about the infliction of the death penalty. Because *Witherspoon* was not overruled by *Lockhart,* petitioner suggests that the latter case does not bar his claim for relief under the Sixth and Fourteenth Amendments. Pet. Reply Brief in Support of the Supplemental Motion for Summary Judgment, at 1–4.

The problem with this argument is that it ignores the extremely limited nature of the Court's decision in *Witherspoon* and its subsequent refusal to expand that ruling. *See Lockhart,* 106 S.Ct. at 1770 (rejecting suggestion that *Witherspoon* has "broad applicability outside the special context of capital sentencing"). Given this narrow reading of *Witherspoon*—even assuming that the Court has never *actually rejected* the Sixth Amendment claim raised by petitioner here today—I believe the Court's language in *Lockhart* leaves little doubt about its view of the matter. *Accord: Kyles v. O'Leary,* 642 F.Supp. 222 (N.D.Ill. 1986) (Aspen, J.). Accordingly, I reject petitioner's argument that the Sixth Amendment was violated by the State's use of peremptory challenges to exclude blacks from the petit jury which convicted him.

## III. The Swain Systematic Discrimination Claim

As noted above, on June 3, 1985, Judge McMillen held that petitioner could not raise a *Swain* systematic discrimination claim in this habeas action because the claim had not been exhausted in the Illinois courts. Petitioner asks me to reconsider this ruling in light of the Supreme Court's decision in *Batson.* Like *Swain,* the *Batson* decision rested on the Equal Protection Clause of the Fourteenth Amendment. *Batson,* 106 S.Ct. at 1716, 1723. The crux of petitioner's argument is that by arguing to the state courts the same constitutional right as is raised here but only a lesser standard of proof, he preserved all of his

---

**6.** Those jurors, also called "Witherspoon-excludables" after the Court's decision in *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), are those whose scruples against the

death penalty would prevent them from carrying out their duty to apply the law respecting capital sentencing as given to them by the court.

Fourteenth Amendment claims. His argument before the Appellate Court, he asserts, amounted to a mere variation in legal theory from the *Swain* claim presented today.

■ Petitioner is correct that variations in legal theory between the arguments presented before a state court and those made in a habeas proceeding will not raise the exhaustion doctrine's bar. *See Nance,* 707 F.2d at 940. Under the law of this circuit, however, I find that he is wrong in characterizing the claim before me as substantially the same as that raised before the Appellate Court on direct appeal.

As I noted in another habeas case earlier this year, "to determine whether a petitioner has in fact raised a particular constitutional issue with a state appellate court, the Supreme Court has instructed lower courts to decide whether the petitioner has provided the state with a 'fair opportunity' to apply the controlling federal legal principles to the facts bearing on his constitutional claim." *U.S. ex rel. Bachman v. Hardy,* 637 F.Supp. 1273, 1279 (N.D.Ill. 1986), citing *Anderson v. Harless,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) and *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). In interpreting this rule, the Court of Appeals for the Seventh Circuit has held that the argument presented to the state court purporting to cover the now-proffered federal constitutional claim must:

(a) rely on pertinent federal cases employing constitutional analysis; (b) rely on the state cases employing constitutional analysis in like fact situations; (c) assert the claim in terms so particular as to call to mind a specific right protected by the Constitution; or (d) allege a pattern of facts that is well within the mainstream of constitutional litigations....

*United States ex rel. Cole v. Lane,* 752 F.2d 1210, 1219 (7th Cir.1985) *quoting*

*United States ex rel. Sullivan v. Fairman,* 731 F.2d 450, 454 (7th Cir.1984).

Even under the most generous reading of the papers before the Illinois Appellate Court, it is clear that petitioner does not meet the *Sullivan* test. His argument before the state court, as described in detail in the statement of facts, was essentially a plea to the state courts to reject the federal standard articulated by *Swain* and to forge a new path on state constitutional grounds. He neither argued applicable federal cases,[7] relied on state cases following federal law, or presented evidence of systematic discrimination which would suggest he was raising a *Swain* argument. The Appellate Court's ruling, based entirely on state law, indicates that the three judges sitting there had a similar view of petitioner's efforts.

■ In short, I not only think that petitioner did not raise a federal equal protection claim at his state court appeal, I believe that he knowingly and explicitly decided to waive the issue, either for tactical reasons or out of a sincere belief that the federal rule was wrong. Even assuming that petitioner did not intentionally relinquish his known rights, his actions at the state court level forfeited his right to habeas relief on this claim. *Nutall v. Greer,* 764 F.2d 462, 464 (7th Cir.1985).

This view is consistent with Judge McMillen's ruling that petitioner could not maintain a systematic discrimination claim but could pursue an individual case discrimination theory. My only difference with my colleague's ruling concerns his characterization of petitioner's efforts as exhausted. The exhaustion requirement refers only to state remedies still available at the time the federal petition is filed. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 1570 n. 28, 71 L.Ed.2d 783 (1982); *Nutall,* 764 F.2d at 463. Because Illinois courts consider waived any issues not

---

7. Petitioner's citation of *Swain* in the Appellate Court appears solely for the purpose of arguing that its standard should not be followed in interpreting the Illinois state constitution; *Taylor v. Louisiana* was cited only for the general proposition that the federal Constitution provides for trial by an impartial jury. No attempt was made to argue that these cases stood for the proposition urged by petitioner here.

raised on appeal, post-conviction relief under Illinois law was never available to the petitioner on the systematic discrimination claim. *See Gray v. Greer,* 707 F.2d 965, 967 (7th Cir.1983); *United States ex rel. Williams v. Brantley,* 502 F.2d 1383 (7th Cir.1974). Accordingly, the doctrine of waiver, not exhaustion, governs this matter.

I emphasize that my difference with Judge McMillen is academic. The question whether petitioner waived or failed to exhaust the claim makes no practical difference in this case, as under either standard petitioner cannot maintain a systematic discrimination claim under *Swain.*

### Conclusion

For the reasons set forth herein, the petitioner's motion for summary judgment is denied and the respondents' motion for summary judgment is granted.

It is so ordered.