**UNITED STATES of America, ex rel. Lonnie YATES, Petitioner,**

v.

**Phillip T. HARDIMAN, Executive Director of the Cook County Department of Corrections, Richard Elrod, Sheriff of Cook County, and Michael Lane, Director, Department of Corrections, State of Illinois, Respondents.**

No. 84 C 10295.

United States District Court, N.D. Illinois, E.D.

March 20, 1987.

James J. Doherty, Public Defender of Cook County, Chicago, Ill., for petitioner; Marc Fogelberg, Robert P. Isaacson, Asst. Public Defenders, of counsel.

Scott Graham, Asst. Atty. Gen., Neil F. Hartigan, Atty. Gen. of State of Ill., Chicago, Ill., for respondents.

## MEMORANDUM

GEORGE N. LEIGHTON, Senior District Judge.

On the morning of July 11, 1977, in the City of Chicago, the apartment in which seventeen-year-old Veronica Lee lived, was burglarized. Lee, apparently unbeknownst to the burglar, was in the apartment; when discovered, she was stabbed to death. Petitioner, Lonnie Yates, an American Negro, was indicted for the murder and burglary. Following a February 1979 trial, a jury returned guilty verdicts on both offenses. Yates was sentenced to death for the murder and fourteen years' imprisonment for the burglary. He appealed both convictions and the sentence on the murder charge. A divided Illinois Supreme Court, a 4-3 decision, affirmed the convictions. However, because of prosecutorial misconduct, the court unanimously vacated the death sentence and remanded the cause for a new sentencing hearing on the murder charge. *People v. Yates*, 98 Ill. 2d 502, 75 Ill.Dec. 188, 456 N.E.2d 1369 (1983). On May 14, 1984, Yates's petition for certiorari was denied. *Yates v. Illinois*, 466 U.S. 981, 104 S.Ct. 2364, 80 L.Ed.2d 836 (1984), *reh'g denied*, 467 U.S. 1268, 104 S.Ct. 3563, 82 L.Ed.2d 864 (1984).

### I

Having exhausted his available state remedies, Yates filed a petition in this court seeking habeas corpus relief under 28 U.S.C § 2254. He alleged that in his state court trial, he was: (1) denied his Sixth and Fourteenth Amendment rights to be tried by a jury composed of a representative cross section of the community, because the prosecutor exercised peremptory challenges to exclude members of his race from the jury; (2) denied his Sixth and Fourteenth Amendment rights to present a defense, because the trial judge excluded certain evidence; and (3) denied his Fourteenth Amendment due process rights, because the prosecutor made the inflammatory and unsupported argument that Yates had sexually attacked Lee.[1]

Both Yates and respondents have moved for summary judgment on the peremptory challenge issue. Because the trial court made no specific findings on the operative facts underlying the claim, this court initially denied both motions and ordered an evidentiary hearing. *See Townsend v. Sain*, 372 U.S. 293, 314, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963); *see also* 28 U.S.C. § 2254(d)(1). On December 12, 1986, the cause was heard. Petitioner submitted the affidavit of the state court judge who presided over Yate's trial. The judge avers that he denied Yate's motions for mistrial on the basis of *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Petitioner also directed the court's attention to certain portions of the state court record. Respondents offered no evidence. The record of the state court proceedings reveals the following facts relevant to Yates's peremptory challenge claim.

### II

During voir dire examination of prospective jurors, the prosecutor exercised thir-

---

**1.** Each of these arguments were presented to the Illinois Supreme Court. *People v. Yates*, 98 Ill.2d 502, 75 Ill.Dec. 188, 456 N.E.2d 1369 (1983).

teen of sixteen peremptory challenges to excuse Negroes; one Negro sat on the jury. The characteristics of the Negroes excluded were similar to those of non-Negroes who sat on the jury. The Negroes excluded were:

1. Gwendolyn Walker, a homemaker and mother of four. R. 1274-5. Her husband was employed as a quality engineer for American Can Company. R. 1275. One of their daughters had worked as a nurse. R. 1276. One son was working for American Can, and another for the Railroad Retirement Board. R. 1277-78. Their fourth child, a son, was a high school student. R. 1278. No member of Mrs. Walder's family had ever been charged with a crime. R. 1279.

2. John H. Collins, a Chicagoan who had worked for thirty years as a lift truck operator for Hi City Transportation. He and his wife owned their home. R. 1384. They have four children. One daughter was working at Illinois Research Company in the Insurance Department Office and another was employed by Mercury Records. R. 1384-86. One son was working as a supervisor for an electronics company in Rolling Meadows. R. 1385. Their other son had been working for Sunbeam Corporation, before being laid off. R. 1386.

3. Cleo Sykes, a nurse's aide, was employed at the University of Chicago Clinic. R. 1398.

4. Timpie Henderson, a high school special education teacher with a master's degree, was employed by the Chicago Board of Education. R. 1402. Her husband was employed as a machine operator by Sun & Shine Company. R. 1402. Their only child was then a journalism major at Northwestern University. R. 1402-03. Mrs. Henderson was once the victim of a burglary. R. 1406.

5. Joseph Clay, a Chicago Transportation Authority ticket agent; he had held that position for over fourteen years. Mr. Clay and his wife owned their home. R. 1447.

6. Derek Southern, a graduate of Parker High School in Chicago. Mr. Southern was unemployed and lived with his parents. R. 1458-60. No one in his family had ever been charged with a crime. R. 12461-12.

7. Mrs. Jessie Sherrod, a retired social worker who had worked for the Chicago Department of Public Welfare for thirty-three years. R. 1501. Her only child was employed as a corporate attorney for Sears Roebuck and Co. R. 1502. Mrs. Sherrod's husband was teaching at the University of Illinois. R. 1503. She had once been held at gunpoint; regarding that incident she stated that the police "were very sympathetic and understanding and worked with me a long time." R. 1506.

8. Edward Lambert, an automotive repairman. He had been employed by the Ford Motor Company for twenty-nine years. He and his wife owned their home. R. 1507. His wife was working as a laboratory technician for the American Red Cross. His next door neighbor and his wife's nephew were both policemen. R. 1508. No one in his family had ever been charged with a crime. R. 1508-09.

9. Iona Husband, a widow, was employed as a machine operator for Stuart Warner; she had held that position for thirty-four years. R. 1510. One of her sons was working as a mailman and her daughter as a practical nurse. R. 1511. She knew some policemen and her sons were friends with guards at the Cook County Jail; she knew "quite a few of them." R. 1512.

10. Mary Randle, a homemaker who was living with her husband and children on Chicago's far south side. R. 1524. Her husband was employed as an automobile mechanic and her eight children worked at various jobs. R. 1525-26. She had been the victim of a burglary. R. 1527. Mrs. Randle had a seventh grade education and had some difficulty reading. R. 1530. The prosecutor moved to excuse her for cause based on two grounds: her vision and her inability to communicate. R. 1535. The trial judge denied the motion. R. 1536.

11. Lurade Davis, a retired Chicago Park District employee. R. 1608–09. His wife, a licensed practical nurse, was working part-time at the LaRabida Children's Hospital. R. 1608. The Davises owned their home and had two sons. R. 1609. No one in their family had ever been charged with a crime. R. 1611.

12. Robert Christmon, a truck driver for the Chicago Transportation Authority. He had worked there for over nineteen years. R. 1617. His son was once robbed and beaten. R. 1619.

13. Naomy Ollison, a cashier at Thermond Variety Stores. She was living with her four children. R. 1657. She was separated from her husband. R. 1659.

The only characteristic these people had in common was their race. Based on these facts, Yates urges that he was denied his Sixth and Fourteenth Amendment rights to a jury composed of a representative cross section of the community.

In response to the state's use of its peremptory challenges, Yates's counsel twice moved for a mistrial based on the systematic exclusion of Negroes from the jury. In his first motion he stated,

> The black that was accepted ... indicated among other things he had affiliations with police officers. Every [other] black [pro]spective juror in the venire has been systematically excluded.... I don't think the array left fairly and adequately represents a peer group of Mr. Yates and he has a right to be tried by a jury of his peers.... I would ask that a new venire that does fairly and adequately represent the community be brought in. R. 1637–38.

To this, the prosecutor replied,

> I would like to reply to that as being absolute nonsense.... We believe that this is far from being an unrepresentative group. It is most representative as it stands right now but that is not the point. There is nothing that calls on me to defend peremptory challenges. I think the record speaks for itself, the cards speak for themselves and what we are looking for is a fair and impartial

jury and there is no intent to deal with what the defense claims that we are trying to. R. 1638–39.

The trial judge denied petitioner's motion for a mistrial, stating only that "defendant's motion for a mistrial is denied." R. 1639. Later, Yates's counsel again moved for a mistrial "based on the systematic exclusion of blacks" and because the prosecutor exercised thirteen of sixteen peremptory challenges to exclude Negroes from the jury. The second motion was denied. R. 1690.

### III

#### A. *Fourteenth Amendment Claim*

In *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the United States Supreme Court recognized that the purposeful exclusion of Negroes from a jury, because of race, violated the Equal Protection Clause of the Fourteenth Amendment. *Swain*, 380 U.S. at 203–04, 85 S.Ct. at 826–27. Nevertheless, the Court held that the Equal Protection Clause did not require an examination of a prosecutor's reasons for the exercise of his peremptory challenges in any given case. On the contrary, "the presumption ... must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury." *Swain*, 380 U.S. at 222, 85 S.Ct. at 837. The presumption of impartiality could be rebutted only by evidence that a prosecutor "in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be," used his peremptory challenges to exclude Negroes who had been selected by the jury commissioner as qualified jurors. *Swain*, 380 U.S. at 223, 85 S.Ct. at 837. This extraordinary burden of proof has seldom been satisfied. *See McCray v. Abrams*, 750 F.2d 1113, 1120 (2d Cir.1984), *vacated* and *remanded*, — U.S. —, 106 S.Ct. 3289, 92 L.Ed. 2d 705 (1986) and cases cited therein. Further, *Swain* has been the subject of "almost universal and often scathing criticism." *McCray v. New York*, 461 U.S. 961, 964, 103 S.Ct. 2438, 2440, 77 L.Ed.2d 1322 (1983) (Marshall J., dissenting from denial of certiorari); *see also* Winick,

*Prosecutorial Peremptory Challenge Practices in Capital Cases: An Empirical Study and a Constitutional Analysis,* 81 Mich. L. Rev. 1 (1982); Note, *Affirmative Selection: A New Response to Peremptory Challenge Abuse,* 38 Stan. L. Rev. 781 (1986); Comment, *Swain v. Alabama, A Constitutional Blueprint for the Perpetuation of the All-White Jury,* 52 Va.L.Rev. 1157 (1966). Perhaps as a result of this criticism, the Court re-examined the issue.

In *Batson v. Kentucky,* —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), after discussing *Swain* and lower courts' interpretation of it, the Court concluded that *Swain's* burden of proof and evidentiary formulation were inconsistent with the proper standards for assessing a prima facie case for deprivation of rights under the Equal Protection Clause, resulting from a prosecutor's use of peremptory challenges to exclude members of a defendant's race from the petit jury. *Batson,* 106 S.Ct. at 1721.

The Court then established a new burden of proof required to make a prima facie case of unconstitutional discrimination in the selection of a petit jury. First, the defendant must show that he is a member of a cognizable racial group and that the prosecutor exercised challenges to exclude members of the defendant's race from the jury. *Batson,* 106 S. Ct. at 1723. Second, the defendant may rely on the presumption that peremptory challenges permit "those to discriminate who are of a mind to discriminate." *Id.* (quoting *Avery v. Georgia,* 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953)). Third, the defendant must show that these facts, and other relevant circumstances, raise an inference that a prosecutor used peremptory challenges to exclude persons from the petit jury on the basis of race. *Batson,* 106 S.Ct. at 1723. Once the defendant establishes a prima facie case, the state must come forward with race-neutral explanations for challenging members of defendant's race. *Id.* From

this evidence, the trial court must determine if the defendant established purposeful discrimination. *Id.* at 1724.

A review of the record reveals that, given the opportunity, Yates could establish a prima facie case under *Batson.* However, in *Allen v. Hardy,* —— U.S. ——, 106 S. Ct. 2878, 92 L.Ed.2d 199 (1986), the Court determined that *Batson* could not be applied retroactively to cases, such as this, which became "final" before *Batson* was announced. *Allen,* 106 S.Ct. at 2881.[2] Those whose convictions became final prior to *Batson* and who collaterally attack their convictions, are thus required to satisfy the *Swain* standard to establish an Equal Protection violation resulting from the prosecutor's use of peremptory challenges to exclude prospective jurors because they are members of defendant's race. *See Allen,* —— U.S. ——, 106 S.Ct. 2878, 92 L.Ed.2d 199. Yates has not attempted to satisfy *Swain;* his Equal Protection claim therefore fails.

### B. *Sixth Amendment Claim*

The Sixth Amendment to the Constitution provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a ... public trial, by an impartial jury...." U.S. Const. Amend. VI. In *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), the Court held that this provision applies to the states. *Id.* at 149, 88 S.Ct. at 1447. Since *Duncan,* the Court has decided several cases defining the scope of a criminal defendant's Sixth Amendment rights. *E.g., Witherspoon v. Illinois,* 391 U.S. 510, 518, 88 S.Ct. 1770, 1774, 20 L.Ed.2d 776 (1968) (state may not execute defendant pursuant to a verdict returned by a jury from which potential jurors opposed to capital punishment were excluded for cause); *Williams v. Florida,* 399 U.S. 78, 86, 90 S.Ct. 1893, 1898, 26 L.Ed.2d 446 (1970) (criminal defendant's Sixth Amendment rights not violated by state's decision to limit jury to six

**2.** A case is "final" when the judgment of conviction has been rendered, the availability of appeal exhausted and the time for petition of certiorari lapsed. *Allen,* 106 S.Ct. 2880 n. 1. In this case, it is undisputed that Yates's conviction became "final" before the Supreme Court announced its decision in *Batson.*

persons); *Apodaca v. Oregon,* 406 U.S. 404, 410, 92 S.Ct. 1628, 1632, 32 L.Ed.2d 184 (1972) (conviction of crime by less than unanimous jury does not violate right to trial by jury); *Taylor v. Louisiana,* 419 U.S. 522, 533, 95 S.Ct. 692, 699, 42 L.Ed.2d 690 (1975) (exclusion of women from panel from which petit juries are drawn violated defendant's right to jury made up of a fair cross section of the community); *Ballew v. Georgia,* 435 U.S. 223, 245, 98 S.Ct. 1029, 1041, 55 L.Ed.2d 234 (1978) (criminal defendant's Sixth Amendment rights violated by trial before a five-member jury); *Duren v. Missouri,* 439 U.S. 357, 370, 99 S.Ct. 664, 671, 58 L.Ed.2d 579 (1979) (state statute exempting women from jury duty upon request violated fair cross-section requirement); *Lockhart v. McCree,* —— U.S. ——, 106 S.Ct. 1758, 1770, 90 L.Ed.2d 137 (1986) (fair cross-section requirement not violated by removing for cause prospective jurors whose opposition to capital punishment would impair their performance as jurors at sentencing phase); *see also McCray,* 750 F.2d at 1126–27 (discussing pre-*Duncan* Sixth Amendment cases).

▮ A review of these cases makes it clear that the Sixth Amendment's fair cross-section requirement prohibits systematic exclusion of distinct groups of the community from the jury *panel. E.g., Taylor,* 419 U.S. at 531, 95 S.Ct. at 698. "We are ... persuaded that the fair cross-section

requirement is violated by the systematic exclusion of women, who [are a numerous and distinct group in the community]." In that situation, "the Sixth Amendment's fair cross section requirement cannot be satisfied." *Id.* at 531, 95 S.Ct. at 698.[3] The Sixth Amendment issue before this court, whether a criminal defendant has a Sixth Amendment fair cross-section right to a *petit* jury from which potential jurors have not been excluded because of their race, has not been addressed by the Supreme Court.[4] The Circuit Courts of Appeals considering the issue have reached conflicting conclusions. The Second and Sixth Circuits have recognized the right, *Booker v. Jabe,* 775 F.2d 762, 767 (6th Cir.1985), *vacated* and *remanded,* —— U.S. ——, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986), *reinstated,* 801 F.2d 871 (6th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987), *McCray,* 750 F.2d at 1129, while the Fourth, Fifth, Eighth and Ninth Circuits have not. *United States v. Whitfield,* 715 F.2d 145, 147 (4th Cir.1983); *United States v. Leslie,* 783 F.2d 541, 561 (5th Cir.1986), *vacated,* —— U.S. ——, 107 S.Ct. 1267, 94 L.Ed.2d 128 (1987); *United States v. Childress,* 715 F.2d 1313, 1320 (8th Cir.1983), *cert. denied,* 464 U.S. 1063, 104 S.Ct. 744, 79 L.Ed.2d 202 (1984); *Weathersby v. Morris,* 708 F.2d 1493, 1497 (9th Cir.1983) *cert. denied,* 464 U.S. 1046, 104 S.Ct. 719, 79 L.Ed.2d 181 (1984).[5]

---

3. The fair cross-section requirement is based on the conclusion that juries comprised of only special segments of society would be less able to make "the commonsense judgments of the community." *Taylor,* 419 U.S. at 530, 95 S.Ct. at 698. Further, excluding from jury service groups that play vital roles in our society would be inconsistent with our "democratic heritage" and promote lack of confidence in our criminal justice system. *Taylor,* 419 U.S. at 530, 95 S.Ct. at 697.

4. *Duncan* was decided three years after *Swain,* therefore, at the time of the *Swain* decision, the Court had not determined whether Sixth Amendment rights extend to criminal defendants tried in state courts. Thus, the *Swain* Court did not consider the petitioner's possible Sixth Amendment rights but instead limited its analysis to the Equal Protection Clause. *Booker v. Jabe,* 775 F.2d 762 (6th Cir.1985), *vacated* and *remanded,* —— U.S. ——, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986), *reinstated,* 801 F.2d 871 (6th

Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987). Therefore, *Swain* does not preclude Sixth Amendment review of peremporty challenges. *Booker,* 775 F.2d at 767; *see also Teague v. Lane,* 779 F.2d 1332, 1333 (7th Cir.1985) (Cudahy, J., dissenting from grant of rehearing en banc); *McCray,* 750 F.2d at 1124. The *Batson* Court was presented with the opportunity to address the issue, and chose to "express no view on the merits of any ... Sixth Amendment arguments" and instead restricted its analysis to Equal Protection Clause principles. *Batson,* 106 S.Ct. at 1716 n. 4.

5. The state supreme courts addressing the issue have also reached conflicting conclusions. *Compare Fields v. People,* 732 P.2d 1145 (Colo. 1987) (opinion subject to revision or withdrawal); *State v. Gilmore,* 103 N.J. 508, 511 A.2d 1150 (1986); *Riley v. State,* 496 A.2d 997 (Del. 1985); *State v. Neil,* 457 So.2d 481 (Fla.1984); *Commonwealth v. Soares,* 377 Mass. 461, 387 N.E.2d 499 (1979); *People v. Wheeler,* 22 Cal.3d

The issue has been raised but not resolved in the court of appeals for this circuit. *See United States v. Clark*, 737 F.2d 679 (7th Cir.1984) (facts failed to raise presumption of racial motivation); *Palmer v. DeRobertis*, 738 F.2d 168 (7th Cir.1984), *cert. denied*, 469 U.S. 924, 105 S.Ct. 306, 83 L.Ed.2d 241 (1984) (issue waived by habeas petitioner's failure to preserve it in the state court); *see also Teague v. Lane*, 779 F.2d 1332 (7th Cir.1985) (the issue reargued en banc and taken under advisement). The Eleventh Circuit has also declined to rule on the matter. *Lindsey v. Smith*, 86–7162 slip op. at 1781 (11th Cir. Feb. 6, 1987).

Courts refusing to recognize the fair cross-section requirement's application conclude that its protection does not extend to the selection of the petit jury; they thereby immunize a prosecutor's use of peremptory challenges from Sixth Amendment scrutiny. These courts give two reasons to support this conclusion. First, they rely heavily on the continued validity of *Swain*. That is, they reason that extending the fair cross-section requirement to petit jury selection would conflict with *Swain*. *See Leslie*, 783 F.2d at 551; *Whitfield*, 715 F.2d at 147; *Childress*, 715 F.2d at 1320. Second, they note that Sixth Amendment decisions of the Supreme Court invalidating the exclusion of distinct groups from the jury selection process, focus on selection of the jury *panel* rather than the *petit* jury. *See Leslie*, 783 F.2d at 552–53; *Whitfield*, 715 F.2d at 147; *Childress*, 715 F.2d at 1319–20; *Weathersby*, 708 F.2d at 1497. With regard to this latter argument, they rely on a passage from *Taylor*, where the Court stated:

> It should also be emphasized that in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various

distinctive groups in the population. Defendants are not entitled to a jury of any particular composition ... but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof. *Taylor*, 419 U.S. at 538, 95 S.Ct. at 702.

■ This court finds neither of these arguments persuasive. First, *Swain* does not preclude the possibility that a Sixth Amendment claim of exclusion of Negroes from the petit jury, based on the fair cross-section requirement, exists. Under *Swain*, an Equal Protection Clause claim of discriminatory exclusion requires proof of discrimination in "case after case whatever the circumstances." *Swain*, 380 U.S. at 223, 85 S.Ct. at 837. The Court apparently found nothing in the Equal Protection Clause to justify an examination of a prosecutor's use of peremptory challenges in any given case. The Sixth Amendment, however, provides that the right to trial by an impartial jury shall exist in "all criminal prosecutions." Thus, it protects *each* defendant who goes to trial; his rights are not conditioned on what may have occurred in cases tried before his own. *Booker*, 775 F.2d at 771–72; *see also McCray*, 750 F.2d at 1130. Further, and more significantly, *Swain* is no longer controlling authority for Equal Protection Clause claims, *Batson*, 106 S.Ct. at 1723, and there is no reason to construe broadly an overruled and universally criticized Equal Protection Clause case to limit a defendant's Sixth Amendment fair cross-section rights.

■ The court also believes that other Supreme Court precedent leaves room for a Sixth Amendment claim in cases such as this. While it is clear the Sixth Amendment imposes "no requirement that petit juries actually chosen must mirror the com-

258, 148 Cal. Rptr. 890, 583 P.2d 748 (1978) (all recognizing a defendant's Sixth Amendment right, or right under the state's equivalent constitutional provision, to a petit jury from which members of his race have not been systematically excluded) *with State v. Wiley*, 144 Ariz. 525, 698 P.2d 1244 (1985); *Nevius v. State*, 101 Nev.

238, 699 P.2d 1053 (1985); *People v. Payne*, 99 Ill.2d 135, 75 Ill.Dec. 643, 457 N.E.2d 1202 (1983); *State v. Ucero*, 450 A.2d 809 (R.I.1982); *Commonwealth v. Henderson*, 497 Pa. 23, 438 A.2d 951 (1981); *State v. Stewart*, 225 Kan. 410, 591 P.2d 166 (1979) (all refusing to recognize a Sixth Amendment right).

munity and reflect various distinctive groups of the population," *Taylor*, 419 U.S. at 538, 95 S.Ct. at 702, it is also clear that for the fair cross-section requirement to have any meaning, it must have some application to the selection of the petit jury. Permitting a prosecutor to exclude prospective petit jurors merely because they are the same race as the defendant, nullifies the requirement that the jury panel consist of a fair cross section of the community. *Booker*, 775 F.2d at 769–70; *McCray*, 750 F.2d at 1128–29; *see also Lockhart v. McCree*, —— U.S. ——, 106 S.Ct. 1758, 1775 n. 6, 90 L.Ed.2d 137 (1986) (Marshall J., dissenting) ("The right to have a particular group represented on venires is of absolutely no value if every member of that group will automatically be excluded from service" on the petit jury).[6]

Respondents take the position that the majority's opinion in *Lockhart* precludes the Sixth Amendment's fair cross-section requirement from extending to petit jury selection. In that case, the Court addressed the issue of whether "the Constitution prohibits the removal for cause, prior to the guilt phase of a bifurcated capital trial, of prospective jurors whose opposition to the death penalty is so strong that it would prevent or substantially impair the performance of their duties as jurors at the sentencing phase of the trial." *Lockhart*, 106 S.Ct. at 1760. The Court held that it does not.

In *Lockhart*, petitioner McCree was charged in the state court with capital felony murder. At voir dire, the trial judge removed for cause jurors who stated they could not under any circumstance impose the death penalty. The jury ultimately selected, convicted McCree and sentenced him to life imprisonment. After exhausting available state court remedies, he filed a federal habeas corpus petition claiming

that removing for cause "Witherspoon Excludables" from his jury, violated his Sixth Amendment right to an impartial jury.[7] The district court agreed, holding that excluding these jurors produced juries that "were more prone to convict" and thus violated a defendant's Sixth Amendment rights. The court accordingly granted McCree habeas corpus relief. *Grigsby v. Mabry*, 569 F.Supp. 1273, 1324 (E.D.Ark. 1983). The Eighth Circuit affirmed, *Grigsby v. Mabry*, 758 F.2d 226 (8th Cir.1985). The Supreme Court then reversed the Eighth Circuit's decision. *Lockhart*, 106 S.Ct. at 1770.

The Court initially noted that it found "serious flaws" in the studies relied on by the courts below, as evidence that "death qualified" juries were conviction prone. *Lockhart*, 106 S.Ct. at 1762–64. However, it assumed for purposes of the opinion, that the studies were valid and that "death qualified" juries were more conviction prone than juries which included "Witherspoon Excludables." *Id.* at 1764. Nonetheless, the Court concluded that the Sixth Amendment's fair cross-section requirement did not prohibit excluding "Witherspoon Excludables" from the petit jury in capital cases. It first reasoned that the fair cross-section requirement should not be construed so that it could be a tool to scrutinize either for-cause or peremptory challenges. "We have never invoked the fair cross section principle to invalidate the use of either for-cause or peremptory challenges to prospective jurors, or to require petit juries, as opposed to jury panels or venires, to reflect the composition of the community at large." *Id.* at 1764. The Court was convinced that extending the fair cross-section requirement to petit juries was "unsound and unworkable." *Id.* at 1765.

---

**6.** Respondents note that the Supreme Court vacated and remanded both *Booker* and *McCray*. *Michigan v. Booker*, —— U.S. ——, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986); *Abrams v. McCray*, —— U.S. ——, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986). However, on remand, Booker was reinstated and remains good law. *Booker*, 801 F.2d 871 (6th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987).

**7.** "Witherspoon Excludables," a term derived from the Court's decision in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), refers to jurors whose opposition to the death penalty prevents them from performing their duties with regard to the law on capital sentencing.

Had the Court stopped there, it would have foreclosed the possibility of using the fair cross-section requirement in a case such as this, where the defendant alleges a prosecutor used his peremptory challenges to exclude prospective petit jurors because they were the same race as the defendant. The *Lockhart* Court continued, however, and noted that even if the fair cross-section requirement was extended to petit juries, it would reject the conclusion that "death qualification" violated the requirement, in that its application had always been limited to the cases where "a distinctive group in the community" had been excluded. *Id.* at 1765 (citing *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979)). Accordingly, because groups defined solely in terms of shared attitudes, such as opposition to the death penalty, are not distinctive in the community, the fair cross-section requirement did not apply. *Lockhart,* 106 S.Ct. at 1765. The Court therefore left open the possibility that the fair cross-section requirement could offer protection against the exclusion of prospective members from the petit jury because of their inclusion in a "distinctive group" such as race. This is the interpretation the Eleventh Circuit gave *Lockhart* in *Lindsey v. Smith,* 86–7162, slip op. at 1781 (11th Cir. Feb. 6, 1987).[8] *Contra Miller v. O'Leary,* 651 F.Supp. 174, 178–79, (N.D.Ill.1986); *Kyles v. O'Leary,* 642 F.Supp. 222, 230 (N.D.Ill.1986) (both holding that *Lockhart* forecloses Sixth Amendment claim based on exclusion of negroes from the petit jury).[9]

Apart from this "alternative holding," *Lindsey,* 86–7162, slip op. at 1781, there are other indications that *Lockhart* did not close the door on a Sixth Amendment claim of discriminatory exclusion. The Supreme Court's orders vacating and remanding the Second and Sixth Circuits' decisions of *McCray* and *Booker,* both which recognized a Sixth Amendment right to a petit jury from which prospective members were not excluded because of their race, did so "for further consideration in light of *Allen v. Hardy,* 477 U.S. ——, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) and *Batson v. Kentucky,* 476 U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)," not in light of *Lockhart,* which had already been decided. *See Abrams v. McCray,* —— U.S. ——, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986); *Michigan v. Booker,* —— U.S. ——, 106 S.Ct. 3289, 3290, 92 L.Ed.2d 705 (1986). If the Court had intended *Lockhart* to settle the issue with regard to a defendant's Sixth Amendment rights, it would have simply reversed those cases and cited *Lockhart* or remanded in light of *Lockhart.* Further, prior to *Lockhart,* the Court had indicated that the fair cross-section requirement could be applied to the petit jury, and there is nothing in *Lockhart* to suggest those cases were in error. *See Ballew v. Georgia,* 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978) (criminal defendant's Sixth Amendment rights violated by trial before a five-member petit jury); *Apodaca v. Oregon,* 406 U.S. 404, 413, 92 S.Ct. 1628, 1634, 32 L.Ed.2d 184 (1972) (Constitution forbids systematic exclusion of "identifiable seg-

**8.** While the court agrees with the Eleventh Circuit's interpretation of *Lockhart* with regard to the possibility that the fair cross-section requirement may protect against the exclusion of Negroes from the petit jury, *Lindsey,* 86–7162, slip op. at 1781, it disagrees with that court's conclusion that a defendant's Sixth Amendment claim must ultimately fail if based on the same facts as a rejected Equal Protection Clause claim. *Lindsey,* at 1781–1782. In that case, as in this one, *Batson* did not apply retroactively to defendant's Equal Protection Clause claim, therefore he was required to satisfy the *Swain* burden of proof; this he could not do. Because his Sixth Amendment claim was based on the same facts as the Equal Protection Clause claim, the court concluded that he could not escape *Swain* "merely by labeling the claim with the Sixth Amend-

ment." *Lindsey,* at 1782. As this court has already noted, however, it is of the view that the Sixth Amendment's fair cross-section requirement provides a defendant with rights separate and distinct from those provided by the Equal Protection Clause. *Supra,* 17–18 & note 4.

**9.** The Sixth Circuit is apparently of the opinion that *Lockhart* does not foreclose the application of the fair cross-section requirement to discriminatory exclusion claims. On remand from the Supreme Court, it reinstated its earlier opinion which granted habeas relief based on Sixth Amendment grounds. *Booker,* 801 F.2d 871 (6th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987).

ments of the community from jury panels *and* from the juries ultimately drawn from those panels") (emphasis added); *Williams v. Florida*, 399 U.S. 78, 100, 90 S.Ct. 1893, 1905, 26 L.Ed.2d 446 (1970) (number of jurors on the petit jury should be large enough to "provide a fair possibility for obtaining a representative cross section of the community"); *Witherspoon v. Illinois*, 391 U.S. 510, 518, 88 S.Ct. 1770, 1775, 20 L.Ed.2d 776 (1968) (statute permitting the elimination of certain potential jurors from petit jury, resulted in a jury "woefully short" of satisfying Sixth and Fourteenth Amendments' impartiality requirements).

■ This court therefore concludes that while the fair cross-section requirement does not require a petit jury *actually* "mirror the community and reflect distinctive groups of the population," *Taylor*, 419 U.S. at 538, 95 S.Ct. at 702, it does require a defendant be given at least the *possibility* of a petit jury that reflects the community's make-up. When a prosecutor excludes prospective jurors merely because they are the same race as the defendant, he forecloses that possibility and the defendant's Sixth Amendment rights are violated. *See Booker*, 775 F.2d at 770.

### III

■ In order to establish a prima facie violation of the Sixth Amendment, a defendant must demonstrate that:

(1) the group alleged to be excluded is a cognizable group in the community, and (2) there is a substantial likelihood that the challenges leading to this exclusion have been made on the basis of the individual venireperson's group affiliation rather than because of any indication of a possible inability to decide the case on the basis of the evidence presented. *Booker*, 775 F.2d at 773 (*quoting McCray*, 750 F.2d at 1131–32).

Once a prima facie case is established, the burden shifts to the prosecutor to justify the exercise of his peremptory challenges. While his response need not rise to the level of a for-cause exclusion, it must demonstrate a race-neutral selection criteria. *See Booker*, 775 F.2d at 773. If the prosecutor fails to rebut the substantial likeli-

hood that he exercised his peremptory challenges based on the prospective jurors' race, a new trial is required. *Id.* at 773.

■ In this case, Yates established a prima facie case of discrimination. First, the group alleged to have been excluded, Negroes, is a cognizable group within the community. *Peters v. Kiff*, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972). Second, that the prosecutor exercised thirteen of sixteen peremptory challenges to exclude Negroes from the petit jury, and that the background of those excluded was similar to that of those accepted, establishes a substantial likelihood that the challenges were made on the basis of a group affiliation rather than an inability to decide the case on the basis of the evidence presented. While one Negro did ultimately sit on the jury, this is not enough to excuse the prosecutor's conduct from scrutiny.

■ Having established a prima facie case, the burden shifted to respondents to offer a race-neutral explanation for excluding thirteen potential Negro jurors. Respondents failed to sustain that burden, in fact they did not even attempt to do so. Therefore, Yates's prima facie case of racial discrimination has been established, and he has sustained his burden of proving a constitutional violation. Further, because no genuine issues of material fact exist as to this question and he is entitled to judgment as a matter of law, his motion for summary judgment is granted; respondents' motion for summary judgment is denied. Fed.R.Civ.P. 56(c). Accordingly, because he was not afforded his constitutional rights in the state court trial, he is being held in violation of the Constitution and is entitled to relief. 28 U.S.C. § 2254. For these reasons, unless respondents give petitioner a new trial within sixty days of the issuance of this opinion, the writ of habeas corpus will issue.

So ordered.